```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
INDUSTRIAL RISK INSURERS,              :    OPINION AND ORDER
                                       :    DENYING PLAINTIFF
        - against -                    :    INDUSTRIAL RISK INSURERS'
                                       :    MOTION FOR PARTIAL
THE PORT AUTHORITY OF NEW YORK:             VACATUR OF PRIOR
AND NEW JERSEY, et al.,                :    DECISION
                                       :
                                       :    02 Civ. 7170 (AKH)
                                       :
                                       :
                    Defendants.        :
------------------------------------------------------X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

This decision discusses an aspect of the ongoing proceedings to sort out the financial consequences of the destruction of Tower Seven ("7WTC") of the World Trade Center Complex. Two groups of insurance carriers paid losses of their insureds: Industrial Risk Insurers, Inc. ("IRI") paid the losses of Silverstein Properties Inc., the owner of the long term leasehold covering the tower; and Aegis Insurance Services, Inc. ("Aegis") paid the losses of The Consolidated Edison Company of New York ("ConEd"), the owner of the power substation beneath and adjacent to the tower. Both insurance carriers filed subrogated claims against the parties whose alleged faults they considered responsible for the continued burning and ultimate collapse of the tower, after the building caught fire from the flaming debris of Towers One and Two on September 11, 2001. Essentially, the insurance carriers claim that diesel oil tanks, generators and power systems within the structure caused the fires to continue to blaze uncontrolled until the building collapsed.

In separate lawsuits, IRI and Aegis sued the City of New York, Citigroup Inc. and Citigroup Global Market Holdings, Inc. (collectively, "Citigroup"), for

1

maintaining and operating such independent fuel and generating systems, the Port Authority of New York and New Jersey, Inc. for various aspects of fault and responsibility that have not yet been litigated, and the architects, engineers, construction companies and vendors who were engaged to design and construct the fuel and generator systems for the City and for Citigroup.

In response to motions to dismiss filed in each case, I dismissed claims against several of the defendants on various grounds.  See IRI v. The Port Auth. of New York and New Jersey, 387 F. Supp. 2d 299 (S.D.N.Y. 2005); Aegis Ins. Servs., Inc. v. The Port Auth. of New York and New Jersey, 468 F.Supp.2d 508 (S.D.N.Y. 2006); Aegis Ins. Servs., Inc. v. The Port Auth. of New York and New Jersey, 481 F. Supp. 2d 253 (S.D.N.Y. 2007).  IRI appealed my dismissal of the Citigroup defendants to the United States Court of Appeals for the Second Circuit but, in light of an opinion deciding the appeal of different parties which dictated that my ruling be affirmed, amended its appeal to ask for vacatur of one of the three grounds of my order.  The Court of Appeals, raising several concerns, remanded the issue to me for further consideration.

IRI now moves to vacate the third independent ground of my ruling, namely, that Silverstein Properties' involvement in every aspect of Citigroup's leasing of 25 of the 47 stories of 7WTC, including Citigroup's condition to install two diesel fuel tanks and a generator system to create an independent source of supply for full-time, seven day a week, twenty-four a day operation of its trading floor, and its approval of the plans and designs to create and maintain such a system, constitutes an acceptance of the risks thereby created, precluding Silverstein Properties, or IRI as the subrogated

insurance carrier of Silverstein Properties, from suing Citigroup for risks arising from those plans and designs and the system erected from such plans and designs.

After careful review of the opinion of the Court of Appeals, of my previous decisions from which the appeal was taken, and of the additional submissions of the parties, I am not persuaded of any material error that should cause me to change my rulings. The rulings each determined issues tendered by the parties, and were necessary for my decision. Accordingly, I deny IRI's motion for partial vacatur and adhere to my previous decisions.

## **Background: The Destruction of Seven World Trade Center and Related Insurance Coverage**

### **The IRI Lawsuit and Prior Ruling**

As subrogee and assignee of Silverstein Properties, IRI sued The Port Authority of New York and New Jersey ("The Port Authority") as the owner of 7WTC and Citigroup, as well as the two airlines whose airplanes had been hijacked, and other aviation defendants. The issues before me involve only defendant Citigroup; the cases against the airlines and the other aviation defendants are proceeding along a different track, and the claims and defenses involving the Port Authority are not at issue in the present motion.

Salomon Brothers, later acquired by Citigroup and now part of Citigroup Global Market Holdings, had leased portions of floors 1 through 5 and floors 28 through 47 of 7WTC from Silverstein Properties, for offices and for a trading floor that was intended to operate 24-hours per day, 7 days per week. In order to provide the power that could sustain such continuing operations, Salomon designed an independent fuel-supply and generator system, based on two, 6,000 gallon diesel tanks in the basement and on the

first floor, with pressurized transit of the fuel to seven generators on the fifth floor, and transmission of power from the generators to the trading floor. IRI alleged that Salomon was grossly negligent in the ways it designed and maintained its emergency fuel system, and that the heat and flames that were set off when the secondary fires in 7WTC ignited caused the building to burn out of control and collapse.

Citigroup moved to dismiss, on three grounds. I granted defendants' motion. First, I held that the lease between Silverstein Properties and Salomon specifically provided for Salomon's emergency fuel generator system, gave Silverstein Properties the right to have its engineers review and approve Salomon's plans, and provided that Silverstein Properties and Salomon released all claims against each other, including rights of subrogation by their respective insurers. Consequently, since IRI could have no better claim than Silverstein Properties, IRI was contractually barred from maintaining a claim against the party that Silverstein had released. Second, I held that even if IRI's claim could be understood as a claim of gross negligence, Silverstein Properties' release nevertheless applied, and further, under New York law, a claim of defective installation of a buildings system is not sufficient of itself to state a claim of gross negligence And, third, I held that Silverstein Properties had assumed the risks arising from Salomon's fuel and generator system, because Silverstein Properties knew that Salomon had made it a condition of the lease agreement and had accepted that condition, and because Silverstein Properties, from the review work of its engineers, had had intimate knowledge of Salomon's system and its relation to the structural support system of the building. I held that since Silverstein Properties had approved Salomon's system, it could not now complain (and IRI could not now complain) that the very

4

features that Silverstein Properties had approved constituted gross negligence. Whatever the risks and deficiencies of Salomon's system, Silverstein Properties had assumed them when it accepted Salomon's condition of its fuel and generator system, and leased space to Salomon on that basis.

The facts and agreements, and the reasons supporting my rulings, are described in greater detail in my opinion and order, <u>IRI v. The Port Authority of New York and New Jersey</u>, 387 F. Supp. 2d 299 (S.D.N.Y. 2005).

IRI appealed my ruling to the United States Court of Appeals for the Second Circuit.

**The *Aegis* Lawsuit and Prior Rulings**

While <u>IRI</u> was on appeal, the <u>Aegis</u> case, presenting similar issues, came up for decision. Aegis and other insurers, as subrogees for The Consolidated Edison Company of New York, Inc. ("ConEd"), sued the City of New York, the Port Authority, Citigroup, Silverstein and 7 World Trade Company, LP (the owners and managers of 7WTC) (collectively, "Silverstein"), and the architects, engineers and contractors who assisted in building the various diesel fuel tanks and generators. Aegis alleged grounds similar to the grounds that IRI had alleged: that the defendants' negligence created a condition that caused the fires that had ignited 7WTC on September 11, 2001 to continue to burn until the building collapsed, destroying the ConEd substation beneath it.

ConEd had entered into a lease with the Port Authority to construct a power substation at the 7WTC site to provide power to the World Trade Center and Towers One and Two. In anticipation of the structures that were to be built, the Port Authority agreed to indemnify ConEd for any damage to its property resulting from any

later-erected structure. Two tenants, Salomon Brothers (now Citigroup) and the City of New York, obtained authorizations from the Port Authority to construct and maintain diesel fuel tanks and generators for emergency power backup systems: Salomon Brothers, as described above, to support its 24-hour trading floor, and the City of New York to support a command center in case of emergency for Mayor Giuliani, senior City officials, and the New York City Office of Emergency Management.

The City filed a motion for summary judgment and all other defendants filed motions to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. In January 2006, I issued an opinion ruling on the various motions. <u>First</u>, I granted the City's motion for summary judgment, holding that the City was entitled to immunity under the New York Defense Emergency Act (DEA), N.Y. Unconsol. Law § 9101, <u>et seq.</u> (McKinney 2006). <u>Second</u>, I denied the Port Authority's motion to dismiss the negligence claim against it as premature. <u>Third</u>, I held that a legally sufficient negligence claim existed against Citigroup, and against Silverstein, the owners and managers of 7WTC, and that certain of their defenses were premature; thus, I denied their motion to dismiss. <u>Fourth</u>, I dismissed the negligence claims against all architects, engineers, design professionals, and construction contractors hired by the owners and managers of the building, Citigroup or the City, ("the design and construction defendants") because the design and construction defendants owed no duty to ConEd. <u>Fifth</u>, I sustained products liability claims against certain of the design and construction defendants that manufactured products or systems, while dismissing the claims against those defendants that provided only services.

The facts underling the motions, and the theories relating to the various claims, are described in considerably more detail in <u>Aegis Ins. Services, Inc. v. The Port Authority of New York and New Jersey</u>, 468 F.Supp.2d 508 (S.D.N.Y. 2006).

Following my rulings, Silverstein amended its answer to assert third party claims for indemnification and contribution against the design and construction defendants whose motions to dismiss I had granted on the negligence claims asserted against them by Aegis. The design and construction defendants filed motions for summary judgment, and in March 2007, I granted those motions. I held that the design and construction defendants that had been engaged by the City were entitled to the same defense of immunity under the DEA as the City. With regard to the design and construction defendants employed by Citigroup, I granted the motions to dismiss because these defendants owed no duty to Silverstein.

I held also, applying my holding in <u>IRI</u>, that Silverstein had assumed the risk presented by the emergency generator and diesel fuel system designed and constructed by the defendants for Citigroup. I noted that Silverstein was suing in the same capacity in its third party action in <u>Aegis</u> as IRI sued in the <u>IRI</u> lawsuit, for IRI's claim was derivative of Silverstein's claim. Furthermore, Silverstein's third party suit against the architects and engineers engaged by Citigroup could be no better than IRI's suit against Citigroup. The legal issues were the same, and the consequences to Silverstein and its insurer as plaintiffs and to Citigroup and its contractors as defendants were the same. I saw no point in re-examining issues that I had just analyzed and determined, and I ruled again that because Silverstein had assumed the risk inherent in Citigroup's plans and designs and had leased space to Citigroup on that basis, Silverstein

7

could not now maintain its third party claims. My March 2007 Opinion is set out at 481 F. Supp. 2d 253 (S.D.N.Y. 2007).

**The Second Circuit's Opinion Affirming and Remanding *IRI***

After IRI's appellate brief was filed and before Citigroup completed its brief, the Second Circuit decided St. Paul Fire & Marine Ins. Co. v. Universal Brothers Supply, Inc., 409 F.3d 73 (2d Cir. 2005), which held, applying New York law, that a waiver of subrogation clause in an insurance contract bars a claim of gross negligence. Thus, the Second Circuit affirmed my ruling granting Citigroup's motion to dismiss on the subrogation of waiver ground. Once it became clear to IRI that, in light of the St. Paul Fire & Marine ruling, the Second Circuit would affirm my prior decision on the subrogation waiver issue, thereby rendering it improper for the appellate panel to review the other grounds, IRI moved to vacate that portion of my decision that held that Silverstein had assumed the risk posed by Citigroup's plans and designs, thus barring IRI's claim.[1]

The Second Circuit expressed concern with the potential preclusive effect of the ruling in the continuing September 11 Litigation. The Court of Appeals considered the law of New York on assumption of the risk to be unclear, perhaps requiring certification to the New York Court of Appeals. It questioned also if I had decided the Aegis case because of collateral estoppel, and if I had applied the doctrine correctly. The Court of Appeals further raised the question if my unreviewed ruling in IRI would have preclusive or only persuasive effect in future cases. For all of these reasons, it remanded

---

[1] IRI did not seek to vacate my ruling that Citigroup's actions did not constitute gross negligence, in effect abandoning that argument.

8

the issue of assumption of risk to me for further reconsideration. The Second Circuit stated:

> [W]e underscore that, if the district court, on remand, construes its ruling on assumption of risk in such a way that IRI cannot in other cases be collaterally estopped by it, then the need to grant the motion to vacate would be significantly reduced. Similarly, the reverse is true: if the assumption of risk ruling is such that collateral estoppel might well apply, that fact would likely suffice as an extraordinary reason justifying the granting of a vacatur motion. But we leave these issues for the district court.

## **Discussion**

Following remand, several interested parties—Citigroup, Silverstein, and AMEC Construction Management, Inc. ("AMEC"), one of the design and construction defendants engaged by Citigroup—submitted comments.

AMEC and Citigroup submit that it is clear that my ruling in Aegis, dismissing Aegis' claims against AMEC and others, was on the merits and not because of any collateral estoppel effect from my ruling in IRI. Citigroup adds that it would be inappropriate to disturb the IRI ruling because of positions taken by the parties in Aegis, and that IRI's concern about collateral estoppel effects is misplaced. Citigroup points out that I preside over the entire September 11 litigation, and can protect against any untoward or unintended effects of earlier rulings. At most, AMEC and Citigroup suggest that I should simplify clarify my ruling in Aegis to say that the dismissal of the Citigroup design and construction defendants was on the merits, and not because of collateral estoppel. Silverstein, the losing party in Aegis, submits that the Court should either vacate its assumption of risk holding in IRI or construe that portion of the holding such that no collateral estoppel effect would attach.

The Second Circuit's invitation notwithstanding, I find no need to revisit my ruling in either IRI or Aegis (except in one respect noted below). In both cases, I examined the lease agreement between Citigroup and Silverstein; in both, I found that Silverstein had obtained the right to examine Citigroup's plans and designs and to retain experts at Citigroup's expense to conduct such examination, and to veto anything in the plans and drawings that, in Silverstein's opinion, could jeopardize the building. Having just decided the issue in IRI, in a dispute between IRI and Citigroup, there was no point in going through the same reasoning and conduct the same analysis with respect to the same lease in a third-party lawsuit between Silverstein and Citigroup's planners and designers—the third parties whom Citigroup had engaged to plan, design and construct its independently supplied generator system. Nothing I have learned since the issuance of the decisions in IRI and Aegis causes me to change my mind.

The Second Circuit noted in its opinion that it was not clear whether I did or did not apply collateral estoppel in dismissing the claim against the Citigroup design and construction defendants in Aegis. In truth, I did not clearly distinguish whether my ruling was merits-based or an application of the collateral estoppel doctrine for I considered that Silverstein's third-party claim in Aegis against Citigroup's planners and designers was essentially the same claim as IRI's subrogated claims against Citigroup in IRI. However, to avoid controversy, and because it makes no difference in the result, the parties may consider my assumption of risk holding in Aegis to have been on the merits.

It seems premature for the Second Circuit to be concerned about a potentially preclusive effect of my holdings in either Aegis or IRI. The rules of decision in those two cases have not been extended to any other case, or to any other motion in

those two cases and, as I said above, there is no reason to believe that I would consider myself precluded from carefully reviewing any argument on the merits, whether previously decided or not. It would not be proper for a court to vacate or modify a portion of a ruling that it believes to have been properly decided because of some general concern that the rule for decision might work some sort of injustice (not specified) in some later motion or proceeding. Cf. Levitt v. FBI, 70 F. Supp. 2d 346, 350 n. 27 (S.D.N.Y. 1999) ("[P]rudence dictates that the Court not reach out to decide an issue on which a decision may well prove entirely unnecessary.").

## Conclusion

For the foregoing reasons, I deny IRI's motion for partial vacatur.

SO ORDERED.

Dated: New York, New York
January 30, 2008

ALVIN K. HELLERSTEIN
United States District Judge